# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| JARROD JOSEPH MILLER, | Case No. 1:17-cv-00447-SAB (PC) |
|---|---|
| Plaintiff, | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND FOR FAILURE TO STATE A CLAIM |
| v. | |
| MATT JONES, et al., | (ECF No. 1) |
| Defendants. | THIRTY DAY DEADLINE |

Plaintiff Jarrod Joseph Miller is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's complaint, filed March 29, 2017.

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently housed at Calipatria State Prison. On December 27, 2016, while housed at the Substance Abuse Treatment Facility ("SATF") in Corcoran, Plaintiff submitted a staff complaint. (Compl. 4.[1]) On January 21, 2017, Plaintiff was called into the program office by Lieutenant Jones ("Defendant Jones") to be interviewed regarding his staff complaint. (Compl. 4.)

During the interview, Defendant Jones told Plaintiff that correctional officers can grab Plaintiff at any time without an explanation. (Compl. 4.) Plaintiff stated that it is not okay for a correctional officer to grab him and start cussing at him and Defendant Jones replied that a

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

correctional officer can use force to put hands on Plaintiff as long as they do not slam him against a wall. (Compl. 4.) Defendant Jones also told Plaintiff that a correctional officer can search him at any time without an explanation and they get "Post Orders" to randomly search inmates. (Compl. 4.) Plaintiff asked for a copy of the "Post Orders" and was told that they are confidential and inmates cannot receive them. (Compl. 4.) Defendant Jones created a memorandum about the interview. (Compl. 7.) The memorandum contained information that Plaintiff alleges he did not say and parts of it contradicted statements that Plaintiff made in a complaint that he filed. (Compl. 7.)

Plaintiff sent a CDC 22 form request for a copy of post orders regarding random searches. (Compl. 4.) Plaintiff received a response that Post Orders contain confidential information and he is not permitted to receive a copy. (Compl. 4.) Plaintiff looked up Post Orders in the DOM and saw that they only reference rules from OP and DOM and Correctional Officers to changes in those rules but they do not create new confidential rules. (Compl. 4-7.) Plaintiff contends that Defendant Jones attempted to purposefully mislead him into believing that there are confidential rules that he is not entitled to see. (Compl. 7.) Plaintiff submitted an inmate appeal complaining that Defendant Jones lied to him and the memorandum Defendant Jones created was a fabrication and stating that there should be a digital recording of every staff misconduct and inmate appeal interview. (Compl. 7.)

On February 8, 2017, Plaintiff was in a cell by himself and a correctional officer came to the door and he was taken to the Program Office in handcuffs. (Compl. 7.) Plaintiff was placed in a cage and Sergeant Lopez ("Defendant Lopez") told him to strip. (Compl. 7.) Defendant Lopez, a female, was in the room. (Compl. 7.) Defendant Lopez kept looking at Plaintiff and said that he has to strip anytime they tell him to and did not have to articulate a reason. (Compl. 7.) Plaintiff refused to strip because he was not told the reason that he had to strip. (Compl. 7, 10.) Defendant Lopez then told another correctional officer to write that Plaintiff refused on the log sheet. (Compl. 10.)

Defendant Lopez left and got Defendant Jones who instead of releasing Plaintiff with an apology demanded that he strip. (Compl. 10.) Defendant Jones refused to tell Plaintiff why he

had to strip. (Compl. 10.) Defendant Jones told Plaintiff that he had to strip anytime he was told to because he was in custody. (Compl. 10.) Plaintiff responded that it was a violation of his rights and Defendant Jones told him he was not entitled to such rights and was acting as if he outranked Defendant Jones. (Compl. 10.) Plaintiff responded that if they would not give him a valid reason to strip he refused. (Compl. 10.) Defendant Jones replied that if Plaintiff did not strip they would forcibly cut his clothing off to perform a cavity search. (Compl. 10.) Plaintiff told Defendant Jones that they could not do that and Defendant Jones replied that they could anytime they wanted to and asked Plaintiff if he remembered the interview they had in which the post orders were discussed. (Compl. 10.) Plaintiff refused to strip and Defendant Jones left. (Compl. 10.)

Plaintiff waited in the cage for ten to fifteen minutes and then another correctional officer came in and let him out of the cage, removed his cuffs, and told him that he was free to go. (Compl. 10.) Plaintiff asked for the reason that this had happened and the correctional officer told Plaintiff that he did not know. (Compl. 12.) After returning to his cell, Plaintiff filed a CDC 22 form to the program office demanding an explanation. (Compl. 12.) Plaintiff received a response that "An inmate is subject to an inspection of his or her person, either clothed or unclothed." (Compl. 12.) The response further stated that it is standard for an inmate to submit to an unclothed body search upon placement in a holding cell. (Compl. 12.)

Plaintiff contends that Defendant Jones retaliated against him by speaking about the January 21, 2017 interview instead of releasing him on February 8, 2017 when Plaintiff refused to strip at the order of correctional officers. (Compl. 5.) Plaintiff also contends that since there was not an emergency situation, Defendants violate their own policies by having him taken to the program office in handcuffs and not removing the handcuffs while he was in the cage. (Compl. 8.) Plaintiff contends that the policies regarding transporting inmates only apply to transporting prisoners in vehicles and taking him to the program office in restraints violated his right to be free from arbitrary seizure in violation of the Fourth Amendment. (Compl. 8.)

Plaintiff also contends that by placing him in the cage they violated his liberty interest under the Fourth Amendment and by keeping him in handcuffs the Defendants violated his right

4

1  to be free from bodily restraints. (Compl. 9, 11.) Plaintiff alleges that by keeping Plaintiff locked in a holding cell with handcuffs on without a hearing his due process rights were violated and it was cruel and unusual punishment. (Compl. 11.) Finally, Plaintiff complains that by relying on policies, standards or regulations that allow Plaintiff to be held in a holding cell without any reason or be forced to strip at any time violates the right to civilized standards. (Compl. 14.) Plaintiff is seeking monetary damages. (Compl. 15.)

For the reasons discussed below, Plaintiff has failed to state a claim against any defendant named in this action. Plaintiff shall be granted the opportunity to file an amended complaint to cure the deficiencies identified in his complaint.

### III.

### ANALYSIS

It is well established that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution." Turner v. Safley, 482 U.S. 78, 84 (1987). However, while prisoners "enjoy many protections of the Constitution, it is also clear that imprisonment carries with it the . . . loss of many significant rights." Hudson v. Palmer, 468 U.S. 517, 524 (1984). Prisoners retain only those rights "not inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system." Gerber v. Hickman, 291 F.3d 617, 620 (9th Cir. 2002) (citations omitted).

**A.     First Amendment**

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d

1 | 559, 567-68 (9th Cir. 2005).

In this instance, Plaintiff alleges that Defendant Jones retaliated against him during their conversation in the holding cell because he reminded Plaintiff about their conversation that prisoners were subject to search and having hands placed on them at any time rather than immediately releasing Plaintiff with an apology. Plaintiff's allegations are insufficient for the Court to infer that Defendant Jones took adverse action against Plaintiff because he filed a grievance. Rather, Defendant Jones' actions appear calculated to address Plaintiff's refusal to comply with orders by other correctional officers and Plaintiff was released shortly after Defendant Jones was notified regarding the situation. The Court finds that Plaintiff has failed to state a plausible claim that Defendant Jones retaliated against him in violation of the First Amendment.

**B.      Fourth Amendment**

Plaintiff alleges that by placing him in handcuffs and a holding cell, Defendants violated his rights under the Fourth Amendment to be free from arbitrary seizure. While prisoners do retain many protections of the Constitution, it is also clear that the curtailment of certain rights is necessary to accommodate the institutional needs and objectives of prison facilities including internal security. Hudson, 468 U.S. at 524. "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." Michenfelder v. Sumner, 860 F.2d 328, 331 (9th Cir. 1988) (quoting O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987)).

While prisoners do retain some some Fourth Amendment rights upon commitment to a correctional facility, it is unclear the extent of an inmate's rights under the Fourth Amendment. Somers v. Thurman, 109 F.3d 614, 618 (9th Cir. 1997). However, it is clear that an inmate's rights under the Fourth Amendment are subject to curtailment. Taylor v. Knapp, 871 F.2d 803, 806 (9th Cir. 1989). The Supreme Court has held that the Fourth Amendment does not apply within the confines of a prison cell. Hudson, 468 U.S. at 526. Prison officials do not violate the Fourth Amendment by conducting random searches of inmates' lockers and cells even without

reason to suspect that a particular inmate is concealing a prohibited item. Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 328 (2012).

The Ninth Circuit has found that prisoners retain a limited right to bodily privacy. Michenfelder, 860 F.2d at 333. Generally strip searches do not violate a prisoner's Fourth Amendment rights, however strip searches that are "excessive, vindictive, harassing, or unrelated to any legitimate penological interest" may be unconstitutional. Id. at 332-33. In determining reasonableness under the Fourth Amendment, the Court "must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell v. Wolfish, 441 U.S. 520, 559 (1979).

Plaintiff's allegations that he was placed in handcuffs and a holding cell are insufficient to rise to the level of an unreasonable seizure. Plaintiff has been convicted of a crime and is incarcerated. Given the valid penological objectives in ensuring prison security, a claim that an inmate was handcuffed and placed in a holding cell is consistent with incarceration and the legitimate concerns of institutional safety. Absent extraordinary circumstances such claims cannot be considered unreasonable seizure in violation of the Fourth Amendment to the extent that an inmate would retain such rights. Plaintiff has failed to state a cognizable claim that his Fourth Amendment rights were violated when he was placed in handcuffs and a holding cell.

**C.     Eight Amendment**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions which are devoid of legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045 (quotation marks and citations omitted); Hope v. Pelzer, 536 U.S. 730, 737 (2002);

Rhodes, 452 U.S. at 346.

To prove a violation of the Eighth Amendment, the plaintiff must "objectively show that he was deprived of something 'sufficiently serious,' and make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (citations omitted). Deliberate indifference requires a showing that "prison officials were aware of a "substantial risk of serious harm" to an inmate's health or safety and that there was no "reasonable justification for the deprivation, in spite of that risk." Thomas, 611 F.3d at 1150 (quoting Farmer, 511 U.S. at 844). The circumstances, nature, and duration of the deprivations are critical in determining whether the conditions complained of are grave enough to form the basis of a viable Eighth Amendment claim. Johnson v. Lewis, 217 F.3d 726, 731.

Plaintiff has not alleged any facts that he was at a substantial risk of serious harm to his health or safety by being placed in handcuffs or in the holding cell. Based on the allegations in the complaint, Plaintiff has not shown that the conditions that he was subjected to were grave enough to form the basis of an Eighth Amendment claim. Johnson, 217 F.3d at 731. Accordingly, Plaintiff has failed to state a cognizable claim for deliberate indifference.

**D.     Fourteenth Amendment**

Plaintiff alleges that his liberty interests were violated when he was handcuffed and placed in a holding cell. The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). Liberty interests may arise from the Due Process Clause itself or from an expectation or interest created by prison regulations. Wilkinson, 545 U.S. at 221.

The Due Process Clause does not confer on inmates a liberty interest in avoiding more adverse conditions of confinement, and the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the condition of confinement at issue. Wilkinson, 545 U.S. at 221-23 (citing Sandin v. Conner, 515 U.S. 472, 481-84 (1995)) (quotation marks omitted). Such liberty interests are generally limited to freedom from restraint

1 which imposes atypical and significant hardship on the inmate in relation to the ordinary
2 incidents of prison life. Id. at 221(citing Sandin, 515 U.S. at 484) (quotation marks omitted);
3 Myron v. Terhune, 476 F.3d 716, 718 (9th Cir. 2007).

In determining if a liberty interest exists, the court may consider "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." Brown v. Oregon Dep't of Corr., 751 F.3d 983, 987 (9th Cir. 2014) (quoting Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003)).

To the extent that Plaintiff alleges that the defendants violated prison policy, a violation of prison policy is not sufficient to state a claim that Plaintiff's constitutional rights were violated. Plaintiff has not alleged the policy that was violated or any facts by which the Court can infer that the policy created a liberty interest in remaining free from being handcuffed or placed in a holding cell.

Further, Plaintiff has not alleged any atypical significant hardship in relation to the ordinary incidents of prison life. There are no allegations in the complaint that Plaintiff's placement in handcuffs and in a holding cell for a limited period of time was outside of the range of confinement that would be normally expected by prison inmates in relation to the ordinary incidents of prison life. Therefore, Plaintiff fails to state a due process claim based on his placement in restraints and in a holding cell.

**E.  CDCR Policy**

Plaintiff also brings this action naming the Warden as the individual responsible for approving the OP and an unidentified deputy director who is responsible for approving the DOM. A suit brought against prison officials in their official capacity is generally equivalent to a suit against the prison itself. McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). Therefore, prison officials may be held liable if "'policy or custom' . . . played a part in the violation of federal law." McRorie, 795 F.2d at 783 (quoting Kentucky v. Graham, 473 U.S.

159, 166 (1985). The official may be liable where the act or failure to respond reflects a conscious or deliberate choice to follow a course of action when various alternatives were available. Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 389 (1989); see Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010). A policy can be one of action or inaction, but both claims require that the plaintiff prove a constitutional violation has occurred. Waggy, 594 F.3d at 713. To prove liability for an action policy the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." Waggy, 594 F.3d at 713. Liability for failure to act requires that Plaintiff show that the "employee violated the plaintiff's constitutional rights;" the agency "has customs or policies that amount to deliberate indifference;" and "these customs or policies were the moving force behind the employee's violation of constitutional rights." Long, 442 F.3d at 1186.

Plaintiff contends that CDCR has a policy that allows correctional officers to place hands on him at any time as long as they do not use excessive force, and a policy that allows him to be searched at any time without explanation. For the reasons discussed above, Plaintiff has failed to allege facts to demonstrate that his federal rights have been violated by a policy or procedure of the CDCR or SATF. Since Plaintiff has not shown that his federal rights have been violated, Plaintiff fails to state a cognizable claim based upon the policies which he is challenging. Waggy, 594 F.3d at 713.

## IV.

## CONCLUSION AND ORDER

Plaintiff's complaint fails to state a cognizable claim for a violation of his federal rights. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).

Although Plaintiff's factual allegations will be accepted as true and "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' " "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a).

Plaintiff is advised that an amended complaint supersedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Plaintiff's complaint, filed March 29, 2017, is dismissed with leave to amend;
3. Within thirty (30) days from the date of service of this order, Plaintiff shall file an amended complaint curing the deficiencies identified by the Court in this order; and

///

4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to state a claim.

IT IS SO ORDERED.

Dated: __**May 10, 2017**__

_____
UNITED STATES MAGISTRATE JUDGE